## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CLARENCE ROSS,** | ) | Civil Action No. _____ |
| | ) | |
| **9502 Pin Oak Street** | ) | |
| **Clinton, MD 20735** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **COMPLAINT** |
| | ) | |
| **AKAL SECURITY, INC.** | ) | |
| | ) | |
| **Serve:  Akal Security, Inc.** | ) | |
| c/o Corporation Service Company | ) | |
| 1090 Vermont Ave. NW | ) | |
| Washington, D.C. 20005. | ) | |
| | ) | |
| **Defendant.** | ) | **A JURY IS DEMANDED** |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Clarence Ross ("Mr. Ross" or "plaintiff"), by his attorneys David Cashdan, John

Griffin, Jr. and Katherine L. Butler, and for his complaint against Akal Security, Inc. ("Akal" or

"defendant"), alleges as follows:

### NATURE OF THE ACTION

1.      This country's disability laws demand that employers focus on abilities, rather

than disabilities. When an employee can perform the essential functions of their job, as Mr. Ross

could and did without fail, an employer's legal obligation is to allow him to do so.  But, although

Mr. Ross performed his job with distinction, he lost his job because of disability discrimination.

2.      This case challenges Akal's demand that employees who work as SSOs undergo

numerous unnecessary, intrusive and burdensome medical demands in order to keep their jobs.

Although Mr. Ross tried, he could not stop his employer from imposing illegal, disability-based

1

requirements on his employment. Akal knew he could do the job, but did not care. Akal's

conduct was so egregious that the Equal Employment Opportunity Commission issued one of its

rare letters of determination finding that "Respondent discriminated against the Charging Party

in violation of the ADA when it subjected him to a prohibited medical examination." Even

though the facts and law are clear, Akal ignored the EEOC determination and continues to insist

that it is not responsible for suspending Plaintiff from his job.

JURISDICTION AND VENUE

3.      This case is brought under the Americans with Disabilities Act (ADA), 42 U.S.C.

§ 12101 et seq.  This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28

U.S.C. § 1343.

4.      Venue is invoked pursuant to 42 U.S.C. 2000e, which governs venue in cases

under the Americans with Disabilities Act.  The unlawful employment practices challenged in

this lawsuit were committed in Washington, D.C.

PARTIES

5.      The plaintiff Clarence Ross is an adult resident of Prince George's County,

Maryland.

6.      The defendant Akal Security, Inc. is a New Mexico corporation doing business in

Washington, D.C., and may be served with process by serving its registered agent Corporation

Service Company, 1090 Vermont Ave. NW, Washington, D.C. 20005.

STATEMENT OF FACTS

7.      The plaintiff, Clarence Ross, is well qualified to protect the public and the

judiciary.  In 1972 he enlisted in the Air Force and was a K9 handler.  He was a member of the

438 and 314 Military Airlift Control Element Combat Control Teams.  He was sent to various

2

Army and other service schools to perform special operations missions.  He served in air base

defense in Vietnam, Thailand and Korea.  He also served in Australia and Desert Shield.  He

witnessed a horrific Lockheed C-5A GalaxyC5 crash in what was then South Vietnam.  While in

the service, he received the AF Training Ribbon, AF Commendation Medal, AF Good Conduct

Medal with 4 Oak Leaf Clusters, National Defense Service Medal, AF Longevity Service Award

Ribbon with 3 Oak Leaf Clusters and a Republic of Vietnam Campaign Medal.  After being

honorably discharged from the military, he served the United States Postal Service as a letter

carrier and T6 carrier and as a Federal Law Enforcement Officer with the U. S. Postal Inspector

Service for 14 years.

8.      After his retirement from the Postal Service, Akal hired Mr. Ross in 2012 as a

Special Security Officer (SSO) assigned to the District of Columbia (D.C.) Superior Court.

9.      Before he started working for Akal, Mr. Ross was informed that he needed to

undergo a physical in connection with his job.  He took the physical, passed it and was thereafter

put to work as a Special Security Officer for the District of Columbia Superior Court.  He

performed that job with distinction. There was never any issue regarding Mr. Ross's

qualifications for the job, and his work performance always demonstrated his ability to perform

the essential functions of the job.  He was both diligent and reliable.

10.    The following year, he complied with Akal's requirement that he submit to an

annual fitness for duty examination.  He took the examination in April 2013.  Then he went back

to doing his job, which he continued to do with distinction.  He was thus shocked when in

March, 2014, Akal suspended him without pay.  Akal's justification for suspending Mr. Ross was

that the government told the company to do so.  Under its contract with the D.C. Courts, Akal

surrenders fitness for duty determinations to Federal Occupational Health (FOH), so that when

3

FOH deems an Akal SSO unfit, Akal simply removes them -- with no questions asked. Here, Akal reported that FOH had decided that Mr. Ross must be suspended because of questions regarding his 2013 annual medical exam related to disabilities, which Akal knew did not impact his job performance. Akal dutifully complied with FOH's demand, despite knowing full well of Mr. Ross's ability to perform his job. This is a gross violation of the ADA, which provides that an employer cannot defend disability discrimination by saying that a third party asked the employer to do it.  42 U.S.C. 12112(b)(2).

11.     In addition to removing him from the job, Akal notified Mr. Ross that he was required to undergo additional invasive and burdensome medical testing in order to get his job back. These demands were unlawful as they targeted him for invasive testing only because he has a disability, despite his ability to do the job each and every day.

12.     Akal's demands of Mr. Ross were on top of the already rigorous fitness for duty examination that Akal conducts. Mr. Ross completed that exam and heard nothing for almost a year. Then, he was summarily removed from the job and required to run a gauntlet of tests to be able to resume his employment. Akal required Mr. Ross to submit to myriad of testing, including a Bruce protocol treadmill cardiac stress test, blood tests, and have specialists assess his cardiovascular, neurological, and renal function, demands not made upon workers who have no disability.  Akal further demanded that he provide a 30-day blood glucose log, taking readings four time per day.  Akal also required Mr. Ross to provide a year's worth of clinical doctor's notes and personal medical records, as well as a detailed letter from his personal physician describing Mr. Ross's history of diabetes symptoms and treatment, and evaluating whether he could perform the essential functions of the SSO job, even though there was never any credible argument that diabetes impacted his job in any way. Akal also demanded that he produce once

again information about his VA disability rating, which he had provided previously. [verify this]
These requirements were unlawful and served only to target Mr. Ross with numerous improper
demands on the basis of a disability, all without any business necessity. See 42 U.S.C. §
12112(b)(3), (b)(6), and (d)(4)(A).

13.    After getting no help from his employer, Mr. Ross sought help from the EEOC
about this same problem and, after a thorough investigation, the EEOC declared the medical
examination process illegal and in violation of the Americans with Disabilities Act. It issued a
cause determination against Akal, but this did not cause Akal to change its practices.

14.    Even though Akal knew that Mr. Ross was eminently qualified to continue
working as a SSO, it required these illegal medical examinations based on a disability.
Specifically, Akal Security subjected Mr. Ross to illegal screening requirements and made
illegal demands for medical examinations in violation of 42 U.S.C. § 12112(b)(3), (b)(6), and
(d)(4)(A). Akal was Mr. Ross's employer and the responsibility for the discrimination remains
Akal's. See 42 U.S.C. § 12112(b)(2). And when Mr. Ross respectfully asked that these
discriminatory demands be withdrawn, Akal ignored him. These illegal acts caused Mr. Ross's
damages, including economic damages and substantial mental anguish. Akal has never
compensated him for the damages it caused him when it suspended him without pay for a period
of seven months.

COUNT 1

Disability Discrimination - ADA

15.    The plaintiff is a qualified individual with a disability.  The plaintiff performed
his job as a Special Security Officer with distinction, but was subjected to illegal screening
requirements and medical examinations because of a disability, in violation of 42 U.S.C. §

12112(b)(3), (b)(6), and (d)(4)(A).  Akal also suspended him without pay due to his disability.

Akal's conduct violates the Americans with Disabilities Act, which prohibits discrimination in

employment on the basis of disability.  Nor can Akal contract out of its obligations under the

ADA by allowing the USMS to subject its employees to discrimination under the ADA.  42

U.S.C. § 12112(b)(2).  The ADA defines disability discrimination as participating in a

contractual arrangement that results in disability discrimination.  *Id.*  The ADA also defines

unlawful discrimination as utilization of qualification standards that screen out or tend to screen

out those with disabilities.  Akal has violated these provisions be contracting out fitness for duty

decisions and by using qualifications standards that screen out those with disabilities.  The

plaintiff is a qualified individual with a disability and was discriminated against because of his

disability, causing his damages.  Akal also wrongly targeted him because of his history of having

a disability.

16.     The plaintiff timely filed a charge of discrimination to challenge the disability

discrimination he suffered by Akal, and the EEOC issued a cause determination against Akal.

He received a right to sue from the Equal Employment Opportunity Commission on his charge

of discrimination against Akal and timely files this lawsuit to vindicate his rights.

## DAMAGES

17.     The damages suffered by the plaintiff include actual and compensatory damages

for the injuries suffered at the hands of the defendants, including, but not limited to,

compensation for extreme mental anguish.

18.     Further, because Akal's actions were of the sort that render the imposition of

exemplary damages appropriate, the plaintiff is entitled to an award of these damages, which he

seeks.

## RELIEF REQUESTED

The plaintiff asks this court to enter a judgment:

1.   Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act;

2.   Enjoining and permanently restraining these violations of law;

3.   Directing the defendant to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4.   Directing the defendant to pay the plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;

5.   Awarding the plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

6.   Awarding the plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7.   Awarding the plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8.   Awarding plaintiff such other relief, legal or equitable, as may be warranted.

## JURY DEMAND

Plaintiff demands a trial by jury on all of his claims.

Respectfully submitted,

Clarence Ross

By his attorneys,

David Cashdan
D.C. Bar No. 051342
Cashdan & Kane, PLLC

1150 Connecticut Ave. NW, Ste 900
Washington, D.C. 20036-4129
(202) 862-4330
Fax: (202) 862-4331
dcashdan@cashdankane.com

Katherine L. Butler
TX 0101
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas 77008
(713) 526-5677
Fax (888) 370-5038
kathy@butlerharris.com

John Griffin, Jr.
TX 0103
Texas Bar No. 08460300
203 North Liberty Street
Victoria, Texas 77901
(361) 573-5500
Fax (361) 573-5040
jwg@lawmgk.com

Counsel for Plaintiff